**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| SHERWIN JOHNSON, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>BRIAN RECATTO, DENNIS SCIOTTO, RICHARD WHITE, EDWARD COLSON, BARRY KAUFMAN, RONALD GEREVAS, OMNI ENERGY SERVICES CORP.,<br><br>                              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CIVIL ACTION NO:  10-1068**

**SECTION:**

**MAGISTRATE:**

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Sherwin Johnson ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.      Plaintiff brings this action on behalf of the public stockholders of OMNI Energy Services Corp. ("OMNI" or the "Company") against Defendants OMNI and its board of directors (the "Board" or the "Individual Defendants"), seeking equitable relief for their violations of violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), breaches of fiduciary duty, and other violations of state law arising out of their attempt to sell the Company to affiliates of Wellspring Capital Management LLC, Wellspring OMNI Holdings Corporation and Wellspring OMNI

2.      Acquisition Corporation (collectively "Wellspring") by means of an unfair process and for an unfair price of $2.75 in cash for each share of OMNI common stock (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $122 million.

3.      As part of the Proposed Transaction, Brian Recatto ("Recatto"), the Company's Chief Executive Officer, Dennis Sciotto, the Chairman of the Board of the Company, and Edward Colson, a director of the Company, have entered into an agreement with Wellspring to exchange certain shares of their common stock and preferred stock (and in the case of Recatto, cash) in the Company for shares of common stock of the combined company.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331. The claims asserted herein arise under Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Virginia common law. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiff and all of Defendants. In this action, Plaintiff seeks to enjoin a transaction valued at approximately $122 million, so the amount in controversy requirement is satisfied.

3.      Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, and several of Defendants reside in this District.

## PARTIES

4.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of OMNI.

5.      OMNI is a corporation organized and existing under the laws of the State of Louisiana.  It maintains its principal corporate offices at 4500 N.E. Evangeline Thruway, Carencro, Louisiana 70520, and offers a broad range of integrated services to geophysical companies engaged in the acquisition of on-shore seismic data and to oil and gas companies operating primarily in the Gulf of Mexico.

6.      Defendant Brian Recatto ("Recatto") has been the President, Chief Executive Officer, and a director of the Company since 2008.

7.      Defendant Dennis Sciotto ("Sciotto") has been Chairman of the Board of the Company since 2008.

8.      Defendant Richard White ("White") has been a director of the Company since 2001.

9.      Defendant Edward Colson ("Colson") has been a director of the Company since 2005.

10.     Defendant Barry Kaufman ("Kaufman") has been a director of the Company since 2005.

11.     Defendant Ronald Gerevas ("Gerevas") has been a director of the Company since 2008.

12.     Defendants referenced in ¶¶ 6 through 11 are collectively referred to as Individual Defendants and/or the OMNI Board. The Individual Defendants, as officers and/or directors of OMNI, have a fiduciary relationship with Plaintiff and other public shareholders of OMNI and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

13.     The other parties to the merger agreement include Wellspring OMNI Holdings Corporation and Wellspring OMNI Acquisition Corporation. Wellspring OMNI Holdings

2

Corporation is a Delaware corporation and is an affiliate of Wellspring Capital Management, a leading middle-market private equity firm that manages more than $2 billion of private equity capital. Wellspring OMNI Acquisition Corporation is a Delaware corporation wholly owned by Wellspring OMNI Holdings Corporation that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

14.    By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of OMNI and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty and full, candid and adequate disclosure, as well as a duty to maximize shareholder value.

15.    Where the officers and directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a breakup of the corporation's assets; or (iii) a sale of the corporation, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with their fiduciary duties, the directors and/or officers may not take any action that:

(a)    adversely affects the value provided to the corporation's shareholders;

(b)    favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)    contractually prohibits them from complying with their fiduciary duties;

(d)    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

16.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of OMNI, are obligated to refrain from:

(a)    participating in any transaction where the directors or officers' loyalties are divided;

(b)    participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

17.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of OMNI, or are aiding and abetting others in violating those duties.

## CLASS ACTION ALLEGATIONS

18.    Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of OMNI common stock and their successors in interest, except Defendants and their affiliates (the "Class").

19.    This action is properly maintainable as a class action for the following reasons:

(a)      the Class is so numerous that joinder of all members is impracticable.  As of June 15, 2010, OMNI has approximately 21.33 million shares outstanding.

(b)      questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)      Have the Individual Defendants breached their fiduciary duties owed by them to Plaintiff and the others members of the Class;

(ii)     Has OMNI aided and abetted the Individual Defendants' breaches of fiduciary duty;

(iii)    Have Defendants failed to disclose to OMNI's shareholders all material information concerning the Proposed Transaction; and

(iv)    Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d)      Plaintiff's claims are typical of those of the other members of the Class.

(e)      Plaintiff has no interests that are adverse to the Class.

(f)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g)      Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background and Its Poise for Growth*

20.     OMNI is an integrated oil field services company based in Carencro, Louisiana. Founded in 1987, and currently employing 850 people, the Company provides seismic drilling, environmental, equipment leasing, and transportation services to oil and gas exploration and production companies throughout the Gulf of Mexico and the Rocky Mountains region.

21.     The oil and gas services sector suffered a severe and prolonged downturn during the extended recession.  Accordingly, in 2009, OMNI reported revenues of $122.4 million, a decrease of 36.8% compared to 2008. The Company reported revenues for the fourth quarter of 2009 of $26.6 million, a decrease of 47.3% over the fourth quarter of 2008.  In addition, OMNI reported a net loss of $3.0 million for 2009. However, in a press release dated March 15, 2010 announcing the results for the fourth quarter and full year 2009, Defendant Recatto, the Company's President and Chief Executive Officer, noted that the Company has positioned themselves well for the upcoming years and the expected uptick in activity. As stated by Recatto:

> "Our fourth quarter reflects the very difficult conditions facing our industry and **we feel we have been successful in managing our business and positioning the Company for the expected uptick in activity**. We are pleased that we were able to continue geographic expansion into the northeast for participation in the Marcellus shale activity in the coming years. Additionally, we are very excited about our new automated cleaning environmental technologies that were developed and tested during 2009 **and we expect organic growth** from both of these projects during 2010. During the year we have been very active in our integration of our operational business units, extracting the desired synergies including reduced costs and more efficient delivery of our diverse product offering. While we experienced significantly reduced activity in 2009, we feel we were able to maintain market share and alter our cost structure in response to the market conditions **positioning ourselves for what we believe will be a modest recovery in 2010.**…We have good visibility into 2010 for the seismic segment which has work committed in excess of $30

6

million and the other oilfield service business lines are showing improvement and are performing according to our business plan. Pricing seems to have stabilized and the Company has been able to raise prices in some of the more robust drilling markets. We expect to realize the financial impact of this initiative in future periods.

* * *

We expect improved results for all our divisions, and look forward to organic growth both in existing and new markets. We see additional opportunities where we may be able to capitalize on attractive, complementary acquisitions at reasonable prices.

22.     On May 5, 2010, the Company announced its results for the first quarter of 2010. The Company announced that revenues for the first quarter decreased by $8.1 million, to $26.8 million as compared to the first quarter of 2009.  However, in the press release announcing the results, Recatto commented how the market was finally beginning to improve and how the Company was well-positioned to take advantage of the market recovery:

> "Our first quarter reflects the continued challenging conditions facing the markets we serve. We continue to manage our business and position the Company for improving market conditions **which we see beginning to take hold in the second quarter**. Our geographic expansion into the northeast in the Marcellus Shale was particularly challenged by extreme weather conditions in the first quarter and had a significant adverse impact on our ability to execute work in our Seismic Services segment. **Backlog has improved significantly and we anticipate healthy drilling levels to begin during the middle of the second quarter.**
>
> Our recently commissioned automated cleaning system and other cleaning technologies **continue to offer organic growth opportunities** as they are now coming on line and producing the expected revenue contribution. Environmental and Other Services, as well as Equipment Leasing segments, have shown steady improvement from the third and fourth quarter of 2009. With the increased rig count, pricing has stabilized, and we have secured price increases in certain geographic markets. While we continue to experience some reduced activity, we feel we have been able to maintain market share **and have begun to experience modest recovery in these segments.**

* * *

> As expected, ***we are beginning to experience improved results in all our divisions, and look forward to continued organic growth*** as well the ability to capitalize on complementary acquisitions at attractive prices."

23.    In addition, in the Company's Annual Report, filed on March 31, 2010, the Company described how it has recently expanded into very active and prolific areas that has positioned the Company well for the future:

> We anticipate that the Rocky Mountain region ***will continue to be a very active area in terms of natural gas exploration.*** During 2006, we opened an Equipment Leasing location in Rock Springs, Wyoming to establish a presence in the Rocky Mountain region. In conjunction with the acquisition of Holston, we were able to expand our visibility in the Rocky Mountains with the addition of an additional leasing location in Vernal, Utah.

> The Haynesville and Fayetteville Shale region in northern Louisiana and southern Arkansas ***also appear to be a very active area in terms of oil and gas exploration and production.*** Our acquisition of Rig Tools in November 2006 and Industrial Lift in April 2008 allowed us to position ourselves in some of the more prolific shale regions to take advantage of the anticipated growth in those geographical areas. It is our intention to continue to expand into areas that we feel are beneficial to the growth and well-being of the Company.

> ***The Marcellus Shale region of the Northeast United States is expected to be one of the most prolific shale plays in recent times. During 2009, we secured a seismic drilling contract in the Marcellus region.*** Work on that project began in early 2010. Additionally, we have begun operations of an equipment rental facility in the Marcellus region.

> * * *

> As gas prices have gradually recovered and the working rig count increased during the second half of 2009, ***we believe that the outlook for 2010 will be generally favorable relative to the lows that we experienced during 2009***. Our activity levels for the latter half of the fourth quarter showed improvement over earlier periods with the exception of our Seismic Services segment which was negatively impacted by weather conditions in the fourth quarter of 2009.

24.     As stated by an analyst on seekingalpha.com in an article dated March 8, 2010, "the easing of the credit crunch and the rise in oil and gas prices in recent months is benefiting" the oil and gas services sector.  Moreover, the "oil and gas services sector has much further to run." As described by the analyst:

> The world economic situation is improving, particularly in some areas such as industrial production. Energy prices are likely to remain at their new higher levels as fears of global depression ease, while the emerging markets continue to generate very high growth rates for their energy hungry populations.
>
> Finally, and most importantly for the US Oil and Gas services sector, the political tide in the United States is clearly turning in favor of domestic energy production, including environmentally responsible exploitation of the huge gas and oil reserves of the United States both on land and offshore. The anticipation of a more conservative and pro-domestic drilling Congress in Washington DC following the 2010 midterm elections may well be a catalyst to further gains for companies in this sector in coming months. ***A boost in capital spending in the sector is imminent, and with that increased revenues for oil and gas services companies***.

### The Proposed Transaction is Unfair

25.     Despite the promise for growth in the oil and gas sector, the Company agreed to enter into the Proposed Transaction.   In a press release dated June 4, 2010, the Company announced that it had entered into a merger agreement with Wellspring, stating, in part:

> CARENCRO, LA, JUNE 4, 2010 — OMNI Energy Services Corp. (NASDAQ GM: OMNI), a leading provider of environmental services and seismic services to the domestic oil and gas industry, today announced that it has entered into a definitive agreement under which an affiliate of Wellspring Capital Management LLC ("Wellspring") will acquire all of OMNI's outstanding shares for $2.75 per share in cash. The total value of the transaction is approximately $122 million, including assumption of debt.

26.     First the Proposed Transaction represents a paltry premium of just 29.7% based on the closing price of OMNI stock the day prior to the announcement of the Proposed

Transaction, a mere 22% premium based on the prior 30-trading days average, and a *negative* premium based on the $2.82 closing price of OMNI stock on May 4, 2010, just a month prior to the announcement of the Proposed Transaction. Just recently on December 21, 2009, a Bloomberg article entitled "CEOs paying 56% M&A Premium Shows Stocks May be Cheap" reported that "[t]he average premium in mergers and acquisitions in [2009] which U.S. companies were the buyer and seller rose to 56% this year from 47 percent last year [2008]…" Thus, the Proposed Transaction is well below the average premium in like transactions during 2009.

27.     In the months prior to the Proposed Transaction, OMNI stock had been trading well in excess of the Proposed Transaction offer price of $2.75 per share. In fact, as recently as April 29, 2010, OMNI's stock traded at $3.95 per share.

28.     Further, at least one Wall Street analyst had a price target of $15 per share before the Proposed Transaction was announced.

29.     Given the Company's future prospects, the consideration shareholders are to receive is inadequate. Wellspring is picking up OMNI at the most opportune time, at a time when OMNI is poised for growth and its stock price is trading at a huge discount to its intrinsic value.

**The Rollover Shares**

30.     As part of the Proposed Transaction, Recatto, Sciotto, and Colson (the "Roll-Over Directors") have entered into a rollover agreement (the "Rollover Agreement") with Wellspring to exchange certain shares of their common stock and preferred stock (and in the case of Recatto, cash) in the Company for shares of common stock of the combined company.

31.     Pursuant to the Rollover Agreement, Recatto, Sciotto, and Colson are contributing the following amounts to Wellspring in exchange for equity in the combined company:

32.

| Parent Rollover Holders | Parent Rollover Contribution Amount | Type of Parent Rollover Shares |
|---|---|---|
| Brian J. Recatto | $     690,000.00 | Company Common Stock and/or Company Preferred Stock and/or a Cash Investment |
| Dennis R. Sciotto Family Trust Dated 12/19/94 | $  5,150,000.00 | Company Common Stock and/or Company Preferred Stock |
| Edward E. Colson, III Trust | $     800,000.00 | Company Common Stock and/or Company Preferred Stock |

33.     While OMNI shareholders are being cashed out at the unfairly low price of $2.75 per share, and will no longer be able to participate in any future earnings or benefit from any increase in the value of the Company, the Roll-Over Directors will keep an equity portion in the newly combined company and continue to benefit from the future success of the Company.

***The Preclusive Deal Protection Devices***

34.     In addition, on June 4, 2010, the Company filed a Form 8-K with the U.S. Securities and Exchange Commission (the "SEC") wherein it disclosed the operating Agreement and Plan of Merger for the Proposed Transaction (the "Merger Agreement").  As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

35.     In particular, although § 5.2(a) of the Merger Agreement allows the Company to solicit parties until July 16, 2010, upon expiration of the "go-shop" period, a strict "no solicitation" provision kicks in pursuant to § 5.2(b) and the Company must "immediately cease" soliciting other parties as well as engaging in discussions or negotiations with them in order to obtain a price in excess of the amount offered by Wellspring.  At that point, the Company may continue in discussions with only those parties that meet the strict definition of being considered an "Excluded Party." An Excluded Party is a party from whom the Company has received an

acquisition proposal during the go-shop period of which "the Board of Directors of the Company or the Special Committee determines in good faith is bona fide and constitutes or could reasonably be expected to result in a Superior Proposal."

36.     Pursuant to § 5.2 of the Merger Agreement, should the Company receive a competing bid, the Company must notify Wellspring of the bidder's offer.  Thereafter, should the Board determine that the competing offer is superior, Wellspring must be provided with three business days notice before the Company changes its recommendation on the Proposed Transaction. If, during this time, Wellspring proposes an amendment to the Merger Agreement to match the superior offer, the Board, pursuant to § 5.2, must consider this amendment in determining whether the competing bid is still superior. Wellspring is able to match the competing offer because it is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the offer.

37.     In other words, the Merger Agreement gives Wellspring access to any rival bidder's information and allows Wellspring a free right to top any superior offer.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Wellspring and piggy-back upon the due diligence of the foreclosed second bidder.

38.     In addition, the Merger Agreement provides that a termination fee of $1,795,991 and expenses of up to $750,000 must be paid to Wellspring by OMNI if the Company decides to pursue said other offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

39.     In connection with the Proposed Transaction, certain shareholders of the Company, including members of OMNI's directors and executive officers, who collectively own

approximately 24.9% of OMNI's common stock, have entered into voting agreements to vote in favor of the Proposed Transaction with Wellspring. Accordingly, 24.9% of OMNI's common stock is already "locked up" in favor of the Proposed Transaction.

***The Materially Misleading and Incomplete Proxy Statement***

40.     On June 30, 2010, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC in connection with the Proposed Transaction.

41.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction.

42.     For example, the Proxy completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by GulfStar Group I, Ltd. ("GulfStar"), the financial advisor that prepared a "fairness opinion" concerning the Proposed Transaction for the special committee of the Board (the "Special Committee"), so that shareholders can properly assess the credibility of the various analyses performed by GulfStar and relied upon by the special committee and the Board in recommending the Proposed Transaction.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

(i)     The free cash flows of the Company for years 2010-2015, or all of the necessary components needed for a shareholder to calculate the Company's free cash flows, especially given that the *Discounted Cash Flow Analysis* was done using unlevered, after-tax, cash flows;

(ii)    The reasons GulfStar chose a $0.29 interval for its *Trading Volume Analysis*;

(iii)   The criteria utilized by GulfStar to select the companies that were deemed similar to OMNI and used in the *Comparable Companies Analysis*;

(iv)   The multiples observed for each company in the *Comparable Companies Analysis*, especially in light of the fact that Enterprise Value to TTM EBITDA multiples greater than 15.0x were excluded from the summary of GulfStar's analysis (this was disclosed in the Company's 13E3 filing but should also be disclosed in the Proxy);

(v)   The criteria by which GulfStar selected the range of multiples which were applied to OMNI financial data to derive an implied share value pursuant to the *Comparable Companies Analysis*;

(vi)   The criteria utilized by GulfStar to select the transactions used in the *Precedent Transactions Analysis*, including why GulfStar failed to include any transactions announced prior to June 1, 2006;

(vii)   The multiples observed for each transaction in the *Precedent Transactions Analysis* (this was disclosed in the Company's 13E3 filing but should also be disclosed in the Proxy);

(viii)   The criteria by which GulfStar selected the range of multiples which were applied to OMNI financial data to derive an implied share value pursuant to the *Precedent Transactions Analysis*;

(ix)   The definition of "free cash flows" used in the *Discounted Cash Flow Analysis* (this was addressed in the Company's 13E3 filing but should also be disclosed in the Proxy);

(x)     The criteria used to select discount rates ranging from 17.0% to 19.05% used in the *Illustrative Discounted Cash Flow Analysis*;

(xi)    The criteria used to select implied perpetuity growth rates of 4.0% to 6.0% in connection with the *Discounted Cash Flow Analysis*;

(xii)   The criteria utilized by GulfStar to select the transactions used in the *Premiums Paid Analysis*, including why GulfStar failed to include any transactions announced prior to June 1, 2006; and

(xiii)  The criteria by which GulfStar selected the range of multiples which were applied to OMNI financial data to derive an implied share value pursuant to the *Premiums Paid Analysis*.

43.     The Proxy also fails to provide sufficient information concerning the effect, if any, of the recent oil spill in the Gulf of Mexico. For example, the Proxy states that OMNI's CEO provided the special committee with a report on the Company with special mention of the BP/Deepwater catastrophe. However, the Proxy fails to describe the anticipated short- and long-term effects that the catastrophe might have on the Company.

44.     In connection with the effect of the oil spill on the Company, the Proxy fails to provide information concerning when the disclosed projections were created, the extent to which such projections have been modified, if at all, since the spill, whether potential acquirers have been provided with different versions of the Company's projections over the past several months, and the extent to which the various potential buyers' (including Wellspring) initial and subsequent indications of interest changed in relation to the receipt of modified projections.

45.     The Proxy also fails to describe material information concerning the sales process, including the criteria used to select potential partners and the discussions and negotiations held with potential partners, including Wellspring.  For example, the Proxy fails to disclose:

(i)     Why OMNI's three business components made the Company an unlikely fit for any potential strategic buyer;

(ii)    An explanation of how the Board, and later the Special Committee, came to retain Stephens, Inc. ("Stephens") as its financial advisor, including the criteria and the number of other advisors considered as well as Stephens' financial interests in OMNI, Wellspring, and the Proposed Transaction;

(iii)   The criteria by which Stephens selected the 49 potential financial acquirers contacted in February or March of 2010;

(iv)    An explanation of why no strategic buyers were contacted in February or March of 2010;

(v)     Why the Board directed Stephens to inquire about potential transactions with only those parties who agreed to keep OMNI's management in place;

(vi)    Why the special committee of the Board had only three members, how those members were selected, and how White and Kaufman were selected as its co-chairs;

(vii)   The extent to which other offers received were subject to financing conditions;

(viii)  Whether the Special Committee made any determination concerning whether the "go-shop" period was likely to produce superior proposals;

(ix)     Why other potential acquirers were not given access to non-public documents in connection with pursuing their indications of interest; and

(x)     The criteria by which the Special Committee retained GulfStar to render a fairness opinion and all interests that GulfStar has or has had in OMNI, Wellspring, and/or the Proposed Transaction.

It is absolutely necessary for shareholders to receive a Proxy that provides all material disclosures related to the sales process in order for shareholders to be able to cast a fully informed decision regarding the Proposed Transaction.

46.     Pursuant to the Merger Agreement, Defendants agreed that OMNI would have the right to continue to shop the Company after announcing the Proposed Transaction in search of a superior offer, up to July 16, 2010. In connection with the "go-shop" period, the Proxy fails to disclose material information concerning why Stephens and not GulfStar appear to be running the "go-shop" process, the criteria by which the 97 potential purchasers were selected, whether the originally contacted parties were contacted again pursuant to the "go-shop" provision, and the extent to which OMNI has received any indications of interest (which is different from simply how many parties signed a non-disclosure agreement) during the "go-shop" period.

47.     The Proxy further neglects to provide shareholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, including the values and risks associated with OMNI remaining as a stand-alone Company—information which is vital to shareholders in deciding how to vote regarding the Proposed Transaction. In particular, the Proxy states that on March 22, 2010, the Board's special committee was authorized with the responsibility to "to represent the interest of the Company's shareholders in connection with any potential transaction or any related or alternative

transaction." The Proxy must disclose what alternatives were evaluated by the M&A Committee, other than a sale of the Company and the reasons these alternatives were not pursued. In addition, the Proxy should disclose the risks and benefits the Board considered in determining whether the Company should remain a stand-alone company.

48.     Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Against All Individual Defendants)

49.     Plaintiff repeats all previous allegations as if set forth in full herein.

50.     As directors of OMNI, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty, good faith, due care, and candor.

51.     By reason of the foregoing, Defendants have breached, and will continue to breach, their fiduciary duties owed to the public shareholders of OMNI, and are engaging in, or facilitating the accomplishment of, an unfair and self interested transaction that is not entirely fair to the public shareholders of OMNI. Plaintiff and the Class will suffer irreparable harm unless Defendants are enjoined from breaching their fiduciary duties and carrying out the aforesaid wrongful transaction.

52.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

53.     Plaintiff and the Class have no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty -- Disclosure**
**(Against Individual Defendants)**

54.     Plaintiff repeats all previous allegations as if set forth in full herein.

55.     The fiduciary duties of the Individual Defendants in the circumstances of the

Proposed Transaction require them to disclose to Plaintiff and the Class all information material

to the decisions confronting OMNI's shareholders.

56.      As set forth above, the Individual Defendants have breached their fiduciary duty

through materially inadequate disclosures and material disclosure omissions.

57.     As a result, Plaintiff and the Class members are being harmed irreparably.

58.     Plaintiff and the Class have no adequate remedy at law.

**COUNT III**
**Aiding and Abetting**
**(Against OMNI)**

59.     Plaintiff repeats all previous allegations as if set forth in full herein.

60.     As alleged in more detail above, OMNI are well aware that the Individual

Defendants have not sought to obtain the best available transaction for the Company's public

shareholders.   Defendants OMNI aided and abetted the Individual Defendants' breaches of

fiduciary duties.

61.     As a result, Plaintiff and the Class members are being harmed.

62.     Plaintiff and the Class have no adequate remedy at law.

**COUNT IV**
**Violations of Section 14(a) of the Exchange Act**
**and Rule 14a-9 Promulgated Thereunder**

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     Defendants have issued the Proxy with the intention of soliciting shareholder

support of the Proposed Transaction.

65.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

66.     Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

67.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)     declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Respectfully Submitted,
**PUGH, ACCARDO, HAAS, RADECKER,
CAREY & HYMEL, L.L.C.**

BY:   *S/ Francis P. Accardo*
         FRANCIS P. ACCARDO
         (La. Bar No. 8349)
         2000 Energy Centre
         1100 Poydras Street
         New Orleans, Louisiana, 70163
         (504) 799-4531
         (504)799-4520 (fax)
         fpa@pugh-law.com

**OF COUNSEL**
LEVI & KORSINSKY, LLP
Eduard Korsinsky
W. Scott Holleman
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been served upon all counsel of record by electronic transmission, CM/ECF and/or by facsimile transmission and/or or by hand delivery or by placing a copy of same in the United States Mail, postage prepaid, properly addressed on this *1st* day of July, *2010*.

  *S/ Francis P. Accardo*
**FRANCIS P. ACCARDO #8349**